UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>            Plaintiff, )<br>vs. )<br>ALEXANDER DEL VALLE-GARCIA, )<br>            Defendant. )  | Case No. 2:13-cr-0148-JAD-GWF<br>**FINDINGS AND**<br>**RECOMMENDATIONS**<br>**Motion to Suppress Statements - #73**<br>**Motion to Suppress Search - #74** |

This matter is before the Court on Defendant Alexander Del Valle Garcia's Motion to Suppress Statements (#73) and Motion to Suppress Search of the Vehicle (#74), filed on February 14, 2014. The Government filed its Consolidated Response to Defendant's Motions (#82) on February 28, 2014. Defendant filed his Reply to the Government's Response (#90) on March 10, 2014. The Court conducted an evidentiary hearing in this matter on March 20, 2014. The Court has also considered Defendant Del Valle Garcia Supplemental Brief (#116), filed on March 24, 2014 and the Government's Response (#119), filed on March 25, 2014.

**FACTUAL BACKGROUND**

Count One of the Second Superseding Indictment (#77) charges Defendants Julio De Armas Diaz, Alex Torres Simon and Alexander Del Valle Garcia with Conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951. The conspiracy allegedly began on or about April 4, 2013 and continued to on or about April 8, 2013. For background purposes only, the following factual allegations are taken from the criminal complaint[1] filed against Defendant Del Valle Garcia on April 11, 2013 and the parties' respective briefs on the motions to suppress:

. . .

---

[1] *See Criminal Complaint (#1)*, Magistrate Case No. 2:13-mj-00253-RAM, filed April 11, 2013.

On April 4, 2013, a confidential informant reported to FBI Special Agent Shay Christensen that Defendants Diaz and Simon, together with other conspirators, were planning to rob a pharmaceutical delivery van. The conspirators allegedly planned to use a gun to confront the delivery van driver at his house, tie him up and cover his mouth with duct tape, and then drive the van to another location where they would remove the pharmaceutical products. The robbers intended to abandon the driver and the van after the robbery was complete. Pursuant to FBI instructions, the informant agreed to feign participation in the robbery plan. Defendant Simon thereafter told the informant that Defendant Del Valle Garcia would meet the informant in a parking lot near Eastern Avenue and Bruce Street on the morning of the planned robbery and the informant would then ride with Mr. Del Valle Garcia to meet up with Diaz and Simon prior to committing the robbery. On April 8, 2013, the informant allegedly met with Mr. Del Valle Garcia as arranged, and rode with him to the parking lot of the Mabel Hoggard Elementary School which was located approximately 500 yards from the home of the delivery van driver. Mr. Del Valle Garcia parked the Nissan Altima automobile he was driving next to the automobile occupied by Diaz and Simon. At that point, FBI agents swooped in and took the suspects into custody.

Mr. Del Valle Garcia allegedly gave his consent to the FBI agents to search the Nissan Altima. The agents discovered gloves and duct tape in the vehicle which were allegedly to be used in the commission of the robbery. Mr. Del Valle Garcia was then transported to the FBI Headquarters. He was taken to an interview room where he was allegedly informed of his *Miranda* rights and agreed to speak with the agents. During the ensuing interview, Mr. Del Valle Garcia denied any knowledge of the robbery conspiracy. He allegedly stated that he was driving a friend to apply for a job that morning, and that the gloves and duct tape found in the vehicle belonged to the registered owner of the vehicle. Based on these allegedly false statements, Defendant Del Valle Garcia is also charged with making a false, fictitious and material statement to the FBI in violation of 18 U.S.C. § 1001. *See Second Superseding Indictment (#77), Count Four.*

Defendant contends that the FBI agent did not adequately communicate with him in his native language, Spanish, and he did not understand the written consent to search form which was printed in English. Defendant also argues that the circumstances surrounding the obtaining of the

consent do not support a finding that it was voluntary. Defendant argues that his subsequent statements to the FBI should be suppressed because they were obtained as a result of the unlawful search of the vehicle and the giving of *Miranda* warning did not cure the taint resulting from the unlawful search.

## HEARING TESTIMONY

### 1. FBI Special Agent Shay Christensen.

FBI Special Agent Shay Christensen was called as a witness at the evidentiary hearing. Agent Christensen testified that he has been an FBI agent a little over five years. He stated that the FBI generally requires three years of work experience to be eligible for employment as an FBI agent. He received a waiver of this requirement because of his Spanish speaking ability. He testified that he originally learned Spanish while serving a two year LDS church mission in southeastern Mexico in 2001-2003. He studied Spanish during a six week training course before beginning his mission. While on the mission, Agent Christensen spoke Spanish every day, all day. In addition, he studied Spanish each morning for 30 minutes. He testified that by the end of his mission, he felt fluent in the Spanish language.

After completing his mission, Agent Christensen attended California State Polytechnic University in Pomona, California where he majored in Spanish. He graduated with honors in 2007. After graduation, Agent Christensen was hired as a contract linguist for the Drug Enforcement Administration (DEA) in July 2007. He worked as a contract linguist 30-40 hours a week for a period of one or one and one-half years. In this job, he listened to Title III (wiretap) intercepted conversations between Spanish speakers. He interpreted, translated and transcribed those conversations into English. His work was reviewed by others for quality control. During his employment with the DEA, Agent Christensen was accepted into the Ph.D. program in Spanish at the University of California Irvine. He completed two quarters (two thirds of a school year) in the program. While participating in the Ph.D. program, he spoke exclusively in Spanish. He dropped out of the program upon being hired as an FBI agent.

As a precondition to employment, Agent Christensen passed an FBI language test demonstrating his proficiency in Spanish. The test includes written, listening and speaking parts.

The speaking part is the most important part of the test and the grade on that part determines whether the applicant will be accepted as qualified in the language. Agent Christensen entered the FBI Academy in October 2008 and completed it in March 2009. He was assigned to the San Juan, Puerto Rico FBI field office in May 2009 where he worked until April of 2012. During his assignment in Puerto Rico, he spoke Spanish on a daily basis. Agent Christensen testified that he is currently assigned to an organized crime squad. He is often called on for assistance by other FBI agents to interview Spanish speaking individuals. During the course of his work as an FBI agent, Agent Christensen has advised suspects of their *Miranda* rights in Spanish and has also requested consents to search from individuals in the Spanish language.

On cross-examination, Agent Christensen acknowledged that he has not specifically studied the Cuban dialect of the Spanish language. He testified that the first translation that he worked on as a linguist for the DEA involved a Cuban subject. He indicated that he may have done other translations involving Cuban subjects. Agent Christensen testified that he scored a "3" on the speaking part of the FBI language test that he took prior to being hired. In June or July 2012, he again took the test and scored a "2+" on the speaking portion. The test is graded on a scale of 1-5.

Agent Christensen testified that he first encountered Mr. Del Valle Garcia in the parking lot of the Mabel Hoggard Elementary School on the morning of April 8, 2013. There were four or five FBI vans or cars, with two agents in each vehicle, in the area of the planned arrest. Immediately before FBI agents closed in, the suspects' vehicles were parked side-by-side in the elementary school parking lot, facing toward the street. *See Government's Hearing Exhibit 59A*, photograph of vehicles. Defendant Del Valle Garcia was in the driver's seat of the Nissan Altima and the informant was in the passenger's seat. Defendants Diaz and Simon were in the other vehicle. The agents pulled in and stopped their vehicles behind the suspects' automobiles, preventing them from backing out of the parking spaces. The FBI agents exited their vehicles with firearms drawn, and Special Agent Nunez, in Spanish, ordered the suspects to exit the vehicles one-by-one, and turn around and walk to the agents who were waiting to handcuff them. The suspects were placed in handcuffs, physically searched and then escorted by agents to separate locations in the parking lot where they were ordered to sit down. It is not clear whether the informant was also treated as a

suspect and handcuffed. Once the suspects were secured, the agents holding long guns or shotguns placed those firearms back into their vehicles, and the other agents holstered their handguns. The agents also removed their bullet proof vests and packed them away in their vehicles. Agent Christensen testified that the agents intended to search the vehicles by obtaining permission to do so from the suspects. According to an FBI "302" report, Mr. Del Valle Garcia was arrested at 6:35 am. *Defendant's Hearing Exhibit A.*

Agent Christensen testified he did not personally take Defendant Del Valle Garcia into custody. Once Mr. Del Valle Garcia was in custody and seated on the ground, Agent Christensen approached him to seek his consent to search his vehicle. There were other FBI agents in the vicinity, but he was the only agent in Mr. Del Valle Garcia's immediate presence. Agent Christensen asked Mr. Del Valle Garcia in Spanish whether he preferred to speak in Spanish or English. Mr. Del Valle Garcia responded in Spanish that he preferred to speak Spanish. The conversation then continued in Spanish. Agent Christensen told Mr. Del Valle Garcia that the agents wanted to look through his car. Mr. Del Valle Garcia responded, in Spanish, "yeah, go ahead." Agent Christensen took out an English version FBI Consent to Search form and orally translated it in Spanish to Mr. Del Valle Garcia. Agent Christensen testified that the FBI has Consent to Search forms printed in the Spanish language, but he forgot to take Spanish language consent forms with him on the morning of the planned arrest. He testified that he read each line of the consent form to Mr. Del Valle Garcia in Spanish. He then asked Mr. Del Valle Garcia if he understood or had any questions. Mr. Del Valle Garcia answered that he did not have any questions and that he understood. Agent Christensen asked Mr. Del Valle Garcia to sign the form and he did so. *See Government's Hearing Exhibit 62*. Agent Christensen testified that Mr. Del Valle Garcia's handcuffs were removed so that he could sign the form. Agent Christensen did not recall whether Mr. Del Valle Garcia actually read the consent form before he signed it. He testified that except for Defendant Del Valle Garcia's signature, the handwriting on the form is his handwriting. The time on the consent form was noted as "6:39 am." *Id.*

According to the FBI "302" report, Defendant was transported to the FBI field office at 6:55 a.m. Agent Christensen testified that other agents transported Mr. Del Valle Garcia to the field

office which is located relatively near to where the arrests occurred. He believed Defendant arrived at the field office at approximately 7:00 a.m. He testified that the FBI building is surrounded by a fence and entry is made through a secured gate. Mr. Del Valle Garcia was taken to an interview room located on the first floor. Agent Christensen described the interview room as a small sized office with a table and three chairs. When Agent Christensen arrived, Defendant was already in the interview room with another FBI agent, Ryan Burke, who does not speak Spanish. Agent Christensen believes that Mr. Del Valle Garcia was in handcuffs while in the interview room.

Agent Christensen testified that prior to entering the interview room, he obtained an FBI Advice of Rights form printed in the Spanish language. Upon entering the interview room, he asked Mr. Del Valle Garcia if he preferred to continue speaking in Spanish or wished to switch to English. Defendant stated that he preferred Spanish. Speaking in Spanish, Agent Christensen told the Defendant that he wanted to ask him some questions, but before doing so he needed to advise him of his rights. Agent Christensen then read the Spanish language Advice of Rights form which contains the *Miranda* warnings to Defendant and then handed the form to him. *See Government's Hearing Exhibit 65A.* (During the hearing testimony, Agent Christensen translated the Advice of Rights form into English for the record). Mr. Del Valle Garcia signed the Advice of Rights form. Agent Christensen could not state whether Mr. Del Valle Garcia actually read the form before he signed it. Mr. Del Valle Garcia told Agent Christensen that he was willing to speak with him. According to another FBI "302" report, Mr. Del Valle Garcia was advised of his *Miranda* rights at 7:15 a.m. *Defendant's Hearing Exhibit B.*

Agent Christensen believed he was wearing his handgun in a holster on his waist while in the interview room. He testified that it is his standard practice to untuck and place his shirttail over his holstered firearm so that it is not visible to the interviewee. He believed he followed this practice during the interview of the Defendant, but does not have a specific recollection of doing so. Agent Christensen and Agent Burke were the only persons in the room with the Mr. Del Valle Garcia during the interview, which, including the giving of the *Miranda* warnings, lasted approximately fifteen (15) minutes. Agent Christensen testified that Mr. Del Valle Garcia did not indicate at any time during the interview that he had difficulty understanding Agent Christensen.

Nor did Agent Christensen have any difficulty understanding Mr. Del Valle Garcia. Agent Christensen testified that the only language issue that arose during the interview was Defendant's use of the English word "junkyard." Agent Christensen clarified with Defendant that he used the term in accordance with its English language meaning.

Following the interview, Defendant Del Valle Garcia was taken into custody by the Las Vegas Metropolitan Police on unrelated local arrest warrants. After federal criminal charges were filed against Defendant Del Valle Garcia, Agent Christensen and another agent went to the county jail on April 12, 2013 and transported Defendant to the FBI field office where they again interviewed him. Prior to questioning the Defendant, Agent Christensen again advised him of his *Miranda* rights in Spanish and had him sign another Advice of Rights form printed in the Spanish language. *See Government's Hearing Exhibit 65B.* Agent Christensen testified that Mr. Del Valle Garcia did not make any statement during this interview indicating that he had difficulty understanding Agent Christensen and he again stated that he was willing to speak to the agents.

### 2. Jason Eksterowicz and Abraham Mariscal.

The Government called Jason Eksterowicz, a chef at the MGM Grand Hotel and Casino, as a witness at the hearing. Mr. Eksterowicz testified that he worked with Mr. Del Valle Garcia, who was employed as an on-call food dispatcher at the MGM, from approximately the beginning of 2010 until Mr. Del Valle Garcia's arrest in 2013. Mr. Eksterowicz testified that he provided the initial employee orientation and annual on-the-job training to Mr. Del Valle Garcia and other employees in the food service department. He also supervised Mr. Del Valle Garcia's work from time to time. Mr. Eksterowicz testified that the ability to read, write and speak the English language sufficient to communicate with supervisors and fellow employees and perform the work duties is a requirement for employment at the MGM. Employees may speak to each other in Spanish, but when speaking to a supervisor or co-employee who does not speak Spanish, the employees must speak in English. Mr. Eksterowicz testified that he had contact with Mr. Del Valle Garcia on numerous occasions and that Mr. Del Valle Garcia was able to understand and speak the English language. He also testified that Mr. Del Valle Garcia was required to review and sign various employee training documents written in the English language. On a daily basis, Mr. Del

Valle Garcia was also provided with written event orders and requisition forms in the English language, which he would use to deliver food orders to various locations in the MGM. Mr. Eksterowicz described the Defendant as a very competent employee.

The Defendant called Abraham Mariscal as a hearing witness. Mr. Mariscal works as a steward at the Tropicana Hotel. He previously worked at the MGM from 2004 until 2012. He worked as a dispatch supervisor or manager and later as a steward. Mr. Mariscal is a native of Mexico and Spanish is his primary language. He also speaks English. Mr. Mariscal assisted Defendant Del Valle Garcia in obtaining a job as a kitchen worker at the MGM. Later, he worked with Defendant for a brief period of time when Mr. Mariscal was a dispatch supervisor or manager and Defendant was an on-call food dispatcher. He also testified that he has socialized with Defendant on occasion. Mr. Mariscal testified that based on his experience with Defendant Del Valle Garcia, he believed that he was not fluent in English and needed assistance in having English documents translated into Spanish and vice versa. Mr. Mariscal also testified that the great majority of the food service employees at the MGM are of Hispanic origin and speak Spanish as their primary language.

## DISCUSSION

### 1. Admissibility of Evidence Discovered During Search of Defendant's Vehicle.

"Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search and seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (internal citations omitted). One exception to the warrant requirement is where the individual gives law enforcement officers permission to search his person, premises or automobile. *Schneckloth v. Bustamonte*, 412 U.S. 218, 22, 93 S.Ct. 2041 (1973). It is the Government's burden to prove that the consent was freely and voluntarily given. Whether the consent was voluntary is determined from the totality of all the circumstances. *United States v. Soriano*, 361 F.3d 494, 501 (9th Cir. 2004*)*. The Ninth Circuit has identified five factors to be considered in determining whether a suspect voluntarily consented to a search. These factors are: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda*

warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained. It is not necessary to check off all five factors, but many of the court's decisions upholding consent as voluntary are supported by at least several of the factors. The factors, however, are only guideposts, not a mechanized formula to resolve the voluntariness inquiry. *Soriano*, at 502, citing *Bustamonte* and other Ninth Circuit decisions. *United States v. Rodriguez*, 464 F.3d 1072, 1077 (9th Cir. 2006) states that the individual's knowledge of his right to refuse consent is highly relevant in determining whether the consent is valid. *See also United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007) (analyzing whether the defendant's consent was voluntary under the five factors).

Before analyzing whether Defendant Del Valle Garcia's consent was voluntary, the Court must first determine whether the Defendant understood Agent Christensen's request for consent to search his vehicle and whether he was aware that the form he signed granted such consent. In *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1985), the court noted that language difficulties may impair the ability of a person in custody to waive his *Miranda* rights "in a free and aware manner." The same principle applies to a suspect's ability to consent to the search of his person, premises or vehicle. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1126 (9th Cir. 2005) (upholding district court's finding that the person consented to search of an apartment, notwithstanding his inability to speak English and the officer's limited Spanish).

In his motion, Defendant raised as an issue Agent Christensen's competence to communicate with him in the Spanish language. Based on Special Agent Christensen's hearing testimony, however, the Court finds that he is proficient in the Spanish language. Agent Christensen testified that he learned to speak Spanish fluently while serving on a mission for two years in southeastern Mexico. In addition to his pre-mission course in Spanish, Agent Christensen studied it everyday while he was on his mission. Following his mission, he obtained a bachelor's degree in Spanish and also completed two quarters toward a Ph.D. in Spanish during which he spoke only in Spanish. Prior to becoming an FBI agent, Agent Christensen worked as a contract linguist for the DEA. He passed a language test to become an FBI agent. He thereafter worked in the San Juan Puerto Rico field office for three years where he spoke Spanish on a daily basis.

Although Defendant's counsel asserts that Defendant Del Valle Garcia speaks the Cuban dialect, whereas Agent Christensen's training and experience has been in a Mexican dialect of the language, there is no evidence that Cuban and Mexican Spanish are so different that a speaker of one dialect would not understand a speaker of the other.

Agent Christensen was a credible and believable witness. He testified that he read the consent to search form to Defendant in Spanish, that Defendant stated in Spanish that he understood and did not have any questions about the request or the consent form. He also testified that Defendant Del Valle Garcia did not indicate any difficulty in understanding him during the subsequent administrations of the *Miranda* rights and the interviews in the Spanish language which followed. Defendant Del Valle Garcia did not testify at the hearing, and no evidence was presented to contradict Agent Christensen's testimony. The Court therefore finds that Agent Christensen competently and accurately communicated with Defendant in the Spanish language in requesting his consent to search his vehicle and in translating the consent to search form for the Defendant. The Court further finds that Defendant understood the agent's request for permission to search his vehicle, which Defendant verbally granted, and that Defendant also understood, by virtue of the agent's translation, the consent to search form that he signed.

There was conflicting testimony during the hearing regarding Defendant's ability to read, write and understand the English language. Because the Court finds that Agent Christensen competently and accurately requested Defendant's consent to search his vehicle in the Spanish language and Defendant gave his consent in Spanish, the Court need not determine whether Defendant can also read the English language. Even assuming that Defendant can read English, Agent Christensen could not state whether he actually read the consent form, before he signed it. The subsequent administration of *Miranda* rights and interviews of the Defendant were also conducted in the Spanish language. Thus, whether Defendant is also able to understand and speak English is not material to the determination of these motions.

The Court now turns to the issue of whether Defendant Del Valle Garcia's consent to search was voluntary. Defendant was taken into physical custody at gunpoint by several FBI agents and was placed in handcuffs and sat down on the ground or pavement. Agent Christensen testified that

the agents had put their firearms away before he approached Defendant and asked him for permission to search his vehicle. Defendant was not informed of his *Miranda* rights prior to the request to search his vehicle. All of these events occurred within four or five minutes after the suspects were arrested. Except for the agents putting their firearms away, these factors tend to favor a finding of involuntariness due to the coercive environment in which the request for consent was made. The coercive nature of the environment was mitigated somewhat, however, by the fact that Agent Christensen did not approach Defendant or request his consent to search until after the agents had put their firearms away. Additionally, other agents were not in the immediate vicinity confronting Defendant when Agent Christensen requested his consent to search. There is no evidence that Agent Christensen or other agents made any threats or statements that induced Defendant to consent to a search. The agents did not tell Defendant that a search warrant for the vehicle could or would be obtained if he did not consent. The written consent form that Agent Christensen translated for the Defendant stated that he had been advised of his right to refuse consent. *Government's Hearing Exhibit 62*. As stated in *United States v. Rodriguez*, 464 F.3d at 1077, an individual's knowledge of his right to refuse consent is highly relevant in determining whether the consent is valid.

Defendant's execution of the written consent form, combined with his verbal consent to the search, supports a finding that he knowingly and voluntarily consented to the search, notwithstanding the otherwise coercive nature of the surrounding circumstances. The Court concludes, based on the totality of the circumstances, Defendant's consent to the search of his vehicle was knowingly, voluntarily and intelligently given. The search of Defendant's vehicle, therefore, did not violate the Fourth Amendment.

### 2. Admissibility of Defendant's *Post-Miranda* Statements.

Defendant's motion to suppress the statements he made during the interviews on April 8, 2013 and April 12, 2013 first hinges on whether the search of his vehicle violated the Fourth Amendment. Defendant argues that his statements should be suppressed as the fruits of the poisonous tree, regardless of whether he was competently informed of his *Miranda* rights prior to making the statements. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407 (1963) and

*United States v. Davis*, 332 F.3d 1163, 1170-71 (9th Cir. 2003). Because Defendant Del Valle Garcia's consent to search his vehicle was knowingly and voluntarily made, however, his motion to suppress his subsequent statements on this ground fails.

To admit an inculpatory statement made by a defendant during custodial interrogation, his waiver of *Miranda* rights must also be voluntary, knowing and intelligent. A valid waiver of *Miranda* rights depends on the totality of the circumstances, including the background, experience and conduct of the defendant. The prosecution bears the burden of proof and there is a presumption against waiver. *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008); *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). There is no evidence that the FBI agents used coercion to obtain Defendant's waiver of his right to remain silent or to compel him to make statements. Prior to any questioning on April 8, 2013, Defendant was informed in Spanish of his *Miranda* rights and executed an Advice of Rights form printed in the Spanish language. There were only two agents in the room with Defendant at the time he was advised of his rights. There is no evidence that the agents displayed firearms or questioned defendant in a coercive manner. It does appear, however, that Defendant was in handcuffs, at least until he executed the Advice of Rights form. Likewise, there is no evidence of coercive techniques or tactics being used during the subsequent interview on April 12, 2013.

In applying the totality of circumstances test, the court also examines whether other circumstances surrounding a defendant's interrogation indicate that he knowingly and intelligently waived his constitutional rights. These circumstances include (1) whether the defendant signed a written waiver, (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system. *United States v. Garibay*, 143 F.3d 543, 538 (9th Cir. 1998).

For the reasons set forth previously, the Court finds that Agent Christensen did, in fact, competently and accurately communicate with Defendant in Spanish during the interviews on April 8 and April 12, 2013. On both occasions, Agent Christensen read the *Miranda* warnings to

Defendant in Spanish from the Spanish language Advice of Rights form. Defendant signed the forms indicating that he understood his rights and agreed to speak to the agents. Defendant made no statements indicating that he had any difficulty in understanding what was said to him or what his rights are. The Court therefore finds that on both April 8 and April 12, 2013, Defendant was properly informed of his *Miranda* rights and he knowingly, voluntarily and intelligently waived those rights prior to speaking with the agents.

## CONCLUSION

The Court concludes that Defendant knowingly, voluntarily and intelligently consented to the search of his motor vehicle on April 8, 2013. Defendant was also properly informed of his *Miranda* rights on April 8 and 12, 2013 and knowingly, voluntarily and intelligently waived his rights prior to any questioning by the FBI agents on both occasions. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Statements (#73) and Motion to Suppress Search of the Vehicle (#74) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 25th day of March, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge