UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:13-cr-0148-JAD-GWF |
| vs. | **ORDER** |
| JULIO DE ARMAS DIAZ, ALEXIS TORRES SIMON, and ALEXANDER DEL VALLE GARCIA, | **Motion to Sever - #75** <br> **Joinder to Motion to Sever - #93** |
| Defendants. | |

This matter is before the Court on Defendant Alexander Del Valle Garcia's Motion to Sever (#75), filed on February 14, 2014. The Government filed its Response to Defendant Garcia's Motion to Sever (#83) on February 28, 2014. Defendant Del Valle Garcia filed his Reply (#88) on March 7, 2014. Defendant Julio De Armas Diaz filed a Joinder to Defendant Del Valle Garcia's Motion to Sever (#93) on March 17, 2014. Defendant Diaz's Joinder consisted of a one-page argument that there were different degrees of culpability among the Defendants that warranted severance. The Government filed its Response to Defendant Diaz's Motion to Sever (#98) on March 18, 2014.

The Court conducted a hearing in this matter on March 20, 2014. During the hearing, counsel for Defendant Diaz requested leave to file a supplemental brief to his joinder in the motion to sever on the grounds that Defendant Simon made statements to a confidential informant which implicate Defendant Diaz and therefore require severance if the statements are introduced at trial. The Court permitted Defendant Diaz to file a supplemental brief, but reserved its ruling on whether the supplemental motion should be denied for lack of timeliness. Defendant Diaz filed his

Supplement to Motion to Sever (#108) on March 21, 2014.  The Government filed its Response to Defendant Diaz's Supplement (#117) on March 24, 2014.

## FACTUAL BACKGROUND

Count One of the Second Superceding Indictment (#77) ("Indictment") charges Defendants Diaz, Simon and Del Valle Garcia with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951.  This alleged conspiracy began on or about April 4, 2013 and involved a plan to confront a delivery van driver at gunpoint, tie him up and cover his mouth with duct tape, and then drive the delivery van to another location where the Defendants would remove the pharmaceutical products which they would later sell.  A confidential informant told the FBI about the planned robbery and agreed to feign participation in the conspiracy.  On April 8, 2013, Defendants Diaz, Simon, Del Valle Garcia and the informant allegedly arrived in two vehicles at an elementary school located near the delivery van driver's home in preparation to commit the planned robbery.  FBI agents arrested all three Defendants at that location.

Defendants Diaz, Simon and Del Valle Garcia are charged in Count Two of the Indictment with Attempted Interference with Commerce by Robbery and in Count Three with Possession of a Firearm in Further of a Crime of Violence in relation to the planned robbery on April 8, 2013. Defendant Del Valle Garcia is charged in Count Four with making a false statement to the FBI relating to items found in his automobile on April 8, 2013 and his alleged non-involvement in the robbery plan. Defendant Diaz is charged in Count Five with making a false statement relating to a firearm found in the vehicle occupied by him and Defendant Simon on April 8, 2013.  Defendant Simon is charged in Count Six with being a felon in possession of a firearm in regard to the firearm found in the vehicle.

Defendants Diaz, Simon and Del Valle Garcia are charged in Count Seven with Conspiracy to commit theft from interstate shipment in violation of 18 U.S.C. § 371.  This alleged conspiracy began no later than October 2012 and continued to on or about April 8, 2013.  The Indictment alleges that the conspirators conspired to break into warehouses, storage facilities, and delivery vans and steal merchandise and pharmaceuticals.  This alleged conspiracy culminated in the attempt to rob the delivery van driver on April 8, 2013.

The Indictment alleges the following overt acts in furtherance of the conspiracy charged in Count Seven: (1) Defendant Simon offered to sell two stolen handbags on October 24, 2012; (2) Defendants Diaz and Simon and a conspirator stole pre-retail medical products from a BeavEx delivery van on November 14, 2012; (3) Defendant Diaz stole pre-retail medical products from a BeavEx delivery van on March 13, 2013; (4) Defendant Simon engaged in a phone call with an individual on March 18, 2013 concerning the sale of controlled substances; and (5) Defendants Diaz, Simon and Del Valle Garcia took steps to carry out the robbery of the delivery van driver on April 8, 2013. Defendants Diaz and Simon are further charged with the theft from interstate shipments in Counts Eight, Nine and Ten relating to thefts that allegedly occurred on October 15, 2012, November 14, 2012 and March 13, 2013. *Indictment (#77), pgs. 7-8.*[1]

Defendant Del Valle Garcia argues that his trial should be severed from that of Defendants Diaz and Simon because he will be unfairly prejudiced by the spillover effect of the substantially greater evidence that will be introduced against the Codefendants. He argues that there is no evidence that he participated in or knew of the earlier crimes charged in Counts Seven through Ten. He also argues that evidence of his participation in the conspiracy to rob the delivery van driver on April 8, 2013 is very thin. Defendant Diaz similarly argues that the evidence against Defendant Simon is greater than the evidence against him and warrants severance of his trial from that of Simon.

According to the Government's summary of its evidence, Defendant Diaz and Simon first discussed the scheme to rob the delivery van driver with the confidential informant in early April 2013. During a monitored and recorded telephone call on April 4, 2013, Defendant Simon invited the informant to participate in the planned robbery and told the informant that his friend "Alexander" or "Ale" would assist in the robbery. The Government states that on the evening of

---

[1] Defendant Del Valle Garcia has identified additional alleged crimes and overt acts, gleaned from the discovery, that he asserts may be introduced at trial. *Motion to Sever (#75), pgs. 4-5.* The Government responds that defendants are not charged with these other crimes and it has not filed notice of intent to introduce evidence of them at trial pursuant to Fed.R.Evid. 404(b). It therefore argues that these other crimes or acts are irrelevant to the issue of severance. *Government's Response (#83), pg. 3, n. 5.*

April 7, 2013, Simon called the informant and told him to meet Simon's friend the next morning on Rochelle Street, and ride with the friend to the meet site. The Government alleges that Simon sent the informant's contact information to Defendant Del Valle Garcia that same evening and spoke to Defendant Del Valle Garcia on the phone. The next morning Defendant Del Valle Garcia picked up the informant at the pre-arranged location and they drove to the elementary school where the Defendants were arrested. Gloves and duct tape were found in Defendant Del Valle Garcia's automobile. Defendants Diaz, Simon and the informant had previously discussed using gloves and duct tape in the commission of the crime. *Government's Response (#83), pgs. 3-5.* The Government does not appear to contend that Defendant Del Valle Garcia participated in or had knowledge of the earlier overt acts or crimes charged in Counts Seven through Ten of the Indictment. The Government contends, however, Defendant Del Valle is criminally liable for the prior acts that were committed in furtherance of the theft conspiracy that he joined in April 2013.

Defendant Diaz's Supplement (#108) identifies three occasions on which Defendant Simon allegedly made statements to the confidential informant which implicated both Simon and Diaz in the crimes charged in the indictment. The confidential informant allegedly reported that on October 24, 2012 Defendant Simon provided him with two purses to see if he wanted to buy them. The informant also reported that Defendant Simon was part of Defendant Diaz's group that was involved in an October 14-15, 2012 theft of Coach™ purses. *Supplement (#108), Exhibit A.* On January 7, 2013, the confidential informant reported to the FBI that Defendant Simon told him about a theft of pharmaceutical drugs from a delivery van in November 2012 in which Defendant Diaz also participated. *Id., Exhibit B.* On March 18, 2013, the informant told the FBI about a theft of pharmaceutical drugs by Defendant Simon and Diaz on March 14, 2012. *Id., Exhibit C.*

Defendant Diaz also identifies statements made by Defendant Simon during a recorded conversation between the informant, Defendant Diaz and Defendant Simon on April 7, 2013 in which they discussed the planned robbery of the delivery van driver. *Id., Exhibit D.* Defendant Diaz specifically points to statements made by Defendant Simon that implicated Diaz in previous criminal activity. *Supplement (#108), pg. 5.* Defendant Diaz argues that these statements are not admissible against him, and, assuming that Defendant Simon does not testify, their admission will

violate his Sixth Amendment right to confront and cross-examine the witnesses against him.

## DISCUSSION

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Codefendants jointly charged are, *prima facie*, to be jointly tried. *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford*, 632 F.2d 1354, 1373 (9th Cir.), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399 (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco*, 15 F.3d 833, 844 (9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again[.]" *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708 (1987). Joint trials also serve the interests of justice "by avoiding the scandal and inequity of inconsistent verdicts." *Id.* 481 U.S. at 211, 107 S.Ct. at 1709. *See also Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937 (1993). The Ninth Circuit has repeatedly stated that a joint trial is particularly appropriate in a conspiracy case where the evidence of the individual conspirators' conduct and statements in furtherance of the conspiracy are admissible against all of the defendants charged in the conspiracy. *United States v. Hernandez*, 952 F.2d 1110, 1114-15 (9th Cir. 1991); *United States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993); and *United States v. Cruz*, 127 F.3d 791, 799 (9th Cir. 1997), *abrogated on other grounds by United States v. Jimenez Recio*, 537 U.S. 270, 123 S.Ct. 819 (2003).

Rule 14(a) of the Federal Rule of Criminal Procedure states that if joinder of offenses or defendants for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires. To obtain severance, a defendant must satisfy the "heavy burden" of showing that prejudice would result from joinder. *United States v. Sitton*, 968 F.2d 947, 961 (9th Cir. 1992). *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir. 1987) notes that because some prejudice is inherent in any

joinder of defendants, "if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held." The Supreme Court in *Zafiro* stated that "[d]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." 506 U.S. at 540, 113 S.Ct. at 938. Severance should only be granted where there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants. Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions." *Zafiro*, 506 U.S. at 539.

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted. These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocense. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008), citing *United States v. Sullivan*, 522 F.3d 967, 981-82 (9th Cir. 2008). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan*, 522 F.3d at 981-82.

   **1. Defendants Del Valle Garcia's and Simon's Motions for Severance Based on Unfair Prejudice Due to "Spillover Evidence."**

The Government's case against Defendant Del Valle Garcia is predicated on his having joined the two alleged conspiracies when he allegedly agreed to participate in the robbery of the delivery van driver on April 8, 2013. In *United States v. Douglass*, 780 F.2d 1472 (9th Cir. 1986), the court recognized that a great disparity in the amount of evidence introduced against joined defendants may, in some cases, be grounds for severance. *Id., citing United States v. Donaway,* 447 F.2d 940 (9th Cir.1971). The primary consideration in deciding whether to grant or deny

6

severance is whether "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." *Id., quoting Escalante,* 637 F.2d, 1197, 1201 (9th Cir. 1980). In holding that the defendant was not unfairly prejudiced by the denial of his motion to sever, the court stated:

> It is clear that much of the evidence introduced at trial only against Miller did not reflect favorably upon the appellants. Nonetheless, the trial judge carefully and repeatedly cautioned the jury about the limited admissibility of such material. Moreover, because the appellants were being tried only for their alleged involvement in a two-day marijuana conspiracy, it is difficult to believe that the jury—aided by instructions—would have been unable to distinguish between evidence relating to that transaction and evidence establishing other occurrences. The district court did not abuse its discretion in denying the motions to sever.

*Douglass*, 780 F.2d at 1479.

In *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971), the court held that the district court erred in denying the defendant's motion to sever. The defendant, Donaway, was implicated in one incident in a much broader illegal horse race betting scheme. The codefendant, Swank, was the alleged hub of the scheme and the overwhelming majority of the evidence introduced at trial related to him. Although the defendants had originally been charged with conspiracy and joined for trial on that basis, the conspiracy charge was dismissed prior to trial. Therefore, the evidence admitted against Swank was not admissible against Donaway. In *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds by United States v. Norby*, 225 F.3d 1053 (9th Cir. 2000), the court distinguished *Donaway* as follows:

> In this case all Appellants were charged in the methamphetamine conspiracy. Although some Appellants may not have been mentioned frequently by name during the trial, the voluminous evidence of this conspiracy and of the overt acts in furtherance of it was relevant to all defendants, and thus would have been admissible even in separate trials.

*Baker*, 10 F.3d at 1389.

So too in this case. The evidence regarding Defendants Diaz's and Simon's alleged conduct in formulating the plan to rob the delivery van driver, and the overt acts and crimes they allegedly committed in relation to the conspiracy to commit theft from interstate shipment would be

7

admissible in a separate trial against Defendant Del Valle Garcia to prove the existence of the conspiracies in which he allegedly participated. The evidence regarding the Defendants' respective roles and acts is not so complex that the jury will be unable to compartmentalize the evidence against Defendant Del Valle Garcia from the evidence against the Codefendants. The same is at least equally true in regard to the jury's ability to compartmentalize the evidence against Defendant Diaz, who is alleged to have been a central figure in both conspiracies. The Court therefore concludes that severance is not required based on the alleged disparity in the evidence regarding the Defendants' participation in the alleged conspiracies. With proper instructions, the jury should also be able to compartmentalize the specific non-conspiracy crimes charged against each Defendant and the evidence relating to those charges.

### 2. Defendant Diaz's Argument That Severance Is Required Pursuant to *Bruton v. United States.*

Defendant Diaz argues in his Supplemental Brief that trial should be severed pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), because the Government intends to introduce statements made by Defendant Simon that also implicate Defendant Diaz in the alleged crimes.

The Court first addresses the lack of timeliness in Defendant Diaz's motion for severance pursuant to *Bruton*. Rule 12(b)(3)(D) of the Federal Rules of Criminal Procedure states that a Rule 14 motion to sever charges or defendants must be raised before trial. Rule 12-1(a)(1) of the District of Nevada's Local Rules of Criminal Practice further provides that unless otherwise specified by the Court, each party shall have thirty (30) days from the time of arraignment in which to file and serve pretrial motions, including a Rule 14 motion to sever. *See* LR 12-1(b)(4). Contrary to Defendant Diaz's assertion, there is no exception to these rules for "nondispositive motions." To the contrary, the rules expressly apply to non-dispositive discovery motions, as well as motions for severance. On January 23, 2014, the Court granted the parties' stipulation to extend the time for filing pretrial motions to February 14, 2014. *Order on Stipulation (#68)*. Defendant Diaz has failed to identify any good cause for belatedly raising *Bruton* as a basis for severance. The Court could therefore properly deny his supplemental motion for severance on this ground. Defendant

Diaz's argument that the trial should be severed pursuant to *Bruton* also lacks merit, however, and the Court will deny it on that substantive ground, rather than on lack of timeliness.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy . . . the right to be confronted with the witnesses against him." In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), the Supreme Court held that the admission at trial of a non-testifying codefendant's confession, which explicitly implicated the defendant, violated the defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. In so holding, the Court stated: "Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." 391 U.S. at 137, 88 S.Ct. at 1628.

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987), the Court stated that *Bruton* created only a "narrow exception" to the general rule that a witness whose testimony is introduced at a joint trial is not considered to be a witness against the defendant if the jury is instructed to consider that evidence only against another defendant. The general rule is predicated on the presumption that jurors will follow the instructions given to them. 481 U.S. at 206-07, 107 S.Ct. at 1707. Unlike the confession in *Bruton*, the redacted confession of the codefendant in *Richardson* did not directly implicate the defendant in the crime and did not even mention her existence. The Court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. 481 U.S. at 211, 107 S.Ct. at 1709. *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151 (1998) states, however, that simply redacting the defendant's name from the codefendant's confession is not sufficient where there remains a direct and obvious inference that the other person implicated by the confession is the defendant.

The Ninth Circuit has held that the admission of a codefendant's statement, which does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's Sixth Amendment rights. *United States v. Hoac*, 990 F.3d 1099, 1105 (9th Cir.

9

1993). In *United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995), the defendants were jointly tried on charges of bank fraud. At trial, the court admitted prior statements made by codefendants who did not testify at trial and gave a limiting instruction that the statements could only be considered as evidence against the defendants who made the statements. In holding that the admission of these statements did not violate the defendant's Sixth Amendment rights, the court stated:

> None of the codefendants' statements incriminated Olano on their face. Unlike the full blown confession that was the subject of *Bruton*, the grand jury and deposition testimony of Hilling, Marler, and Gray that was read to the jury plainly did not have a sufficiently "devastating" or "powerful" inculpatory impact to be incriminating on its face. (citations omitted).

*Olano*, 62 F.3d at 1195. *See also United States v. Angwin*, 271 F.3d 786, 796 (9th Cir. 2001).

The application of *Bruton* has been further limited by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). *Crawford* held that under the Confrontation Clause, testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable and only when the defendant had a prior opportunity to cross-examine the declarant. *Crawford* indicated, but did not specifically hold, that nontestimonial hearsay statements are beyond the scope of the Confrontation Clause. In *Whorton v. Bockting*, 549 U.S. 406, 413-14, 127 S.Ct. 1173, 1179 (2007), the Court noted its statement in *Crawford* that *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531 (1980), which previously governed application of the Confrontation Clause, potentially excluded too much testimony because it imposed Confrontation Clause restrictions on nontestimonial hearsay not governed by the Clause. After noting that *Crawford* is more restrictive than *Roberts* with respect to *testimonial* out-of-court statements, the Court stated:

> But whatever improvement in reliability *Crawford* produced in this respect must be considered together with *Crawford's* elimination of Confrontation Clause protection against the admission of unreliable out-of-court nontestimonial statements. Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability.

*Whorton*, 549 U.S. at 420, 127 S.Ct. at 1183.

. . .

In *United States v. Larson*, 495 F.3d 1094, 1099-1100 n. 4 (9th Cir. 2007), the Ninth Circuit read this passage from *Whorton* as a clear statement that the Confrontation Clause does not apply to nontestimonial statements. Other circuits agree with this interpretation of *Crawford*. *See United States v. Castro-Davis*, 612 F.3d 53, 65 (1st Cir. 2010); *United States v. Smalls*, 605 F.3d 765, 768 n. 2 (10th Cir. 2010); and *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

*Crawford* stated that "testimonial" statements are those which a declarant would reasonably expect to be used prosecutorially. 541 U.S. at 51, 124 S.Ct. at 1364. The Court did not provide a comprehensive definition of the term "testimonial," but stated that it applies at minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. 541 U.S. at 68, 124 S.Ct. at 1374. The Court has since stated that the trial court should look to the primary purpose of the statement to determine whether it is testimonial. *Michigan v. Bryant*, --- U.S. ---, 131 S.Ct. 1143, 1157 (2011). *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013), quoting *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), states that "[a] statement is testimonial when it is 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" The court further stated that "'the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.'" *Id.*

Prior to *Crawford*, the Supreme Court had held that the admission of statements made by a co-conspirator in furtherance of the conspiracy did not violate the Confrontation Clause because such statements are also admissible against the defendants charged with the conspiracy pursuant to Fed.R.Evid. 801(d)(2)(E). *United States v. Bridgeforth*, 441 F.3d 864 (9th Cir. 2006), citing *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2275, 97 L.Ed.2d 144 (1987). In order for a statement to qualify for admission, the following preliminary facts must be shown: (1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy. *Bridgeforth*, 441 F.3d at 869. *Bridgeforth* notes that this rule survives *Crawford* because "co-conspirator statements

are not testimonial." *Id*, 441 F.3d at 869 n. 1, quoting *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005).

Other federal circuits have held that statements made unwittingly by a non-testifying codefendant to an undercover officer or informant are nontestimonial. In *United States v. Dale*, 614 F.3d 942 (8th Cir. 2010), the defendants were jointly tried for conspiracy to distribute cocaine and on two counts of murder. Prior to being charged with the subject crimes, defendant Dale was in jail awaiting trial in an unrelated criminal case. Law enforcement officers persuaded an associate of Dale who was incarcerated in the same jail to wear a wire and probe Dale for information relating to the murders. Dale made statements to the informant that implicated both himself and defendant Johnson in the crimes. At trial, the court admitted Dale's statements into evidence, but ordered that any references to Johnson be redacted. In rejecting Johnson's assertion that the admission of Dale's statements violated his Sixth Amendment rights, the court stated:

> Under any formulation of the rule, Dale's incriminating statements made to Smith were not testimonial. Indeed, it is clear enough that Dale had no idea Smith was wearing a wire, or that the incriminating statements he made to Smith would ultimately be used against him at trial. Had Dale known the authorities were listening in, he likely would not have admitted to committing two unsolved murders. In this sense, we cannot say that Dale, in making the statements, "would reasonably expect [the statements] to be used prosecutorially." *Id.* Nor can we say that an objective witness, in these circumstances, would "reasonably ... believe that the statement would be available for use at a later trial." *Id.* Thus, the critical distinction between *Bruton* and this case is the circumstances under which the out-of-court statement was made. Whereas in *Bruton* the incriminating statement was the product of a formal interrogation and therefore testimonial, the incriminating statements made by Dale here were made unwittingly, and not in anticipation by Dale of future use of the statements at trial. Under our present understanding of the confrontation right, governed by *Crawford*, the introduction of Dale's out of court statements did not violate Johnson's confrontation right.
>
> In so holding, we join many of our sister circuits, which have similarly concluded that the out-of-court statement of a co-defendant made unknowingly to a government agent is not testimonial within the meaning of *Crawford. See United States v. Udeozor,* 515 F.3d 260, 269–70 (4th Cir. 2008); *United States v. Watson,* 525 F.3d 583, 589 (7th Cir. 2008); *United States v. Underwood,* 446 F.3d 1340, 1347–1348 (11th Cir. 2006); *United States v. Hendricks,* 395 F.3d 173, 182–184 (3d Cir. 2005); *United States v. Saget,* 377 F.3d 223, 229–230 (2d Cir. 2004).

*United States v. Dale*, 614 F.3d at 956.

Additional circuits have also reached the same conclusion. *See United States v. Pelletier*, 666 F.3d 1, 9-11 (1st Cir. 2011); *Brown v. Epps*, 686 F.3d 281, 287-89 (5th Cir. 2012); *and United States v. Mooneyham*, 473 F.3d 280, 286-87 (6th Cir. 2007). *Brown v. Epps* notes that no circuit has reached the contrary conclusion. *Id.* at 288. District court decisions in the Ninth Circuit have also held that such statements are nontestimonial and therefore not governed by the Confrontation Clause. *See Zambrano v. Prosper*, 2011 WL 1532403, *15 (C.D.Cal. 2011) and *McCulloch v. Horel*, 2008 WL 755919, *10 (C.D.Cal. 2008).

In regard to the statements that Defendant Simon made to the confidential informant prior to April 7, 2013, the Government states that it "does not intend to elicit testimony which would violate *Bruton* by referencing Diaz." *Government's Response (#117), pg. 3*. The Government states, however, that Defendants Diaz and Simon both participated in the surreptitiously recorded conversation with the confidential informant on April 7, 2013, during which they discussed their plans to rob the delivery van driver. The Government argues that statements made by Defendants Diaz or Simon in that regard are admissible against all three Defendants as statements of co-conspirators in furtherance of the conspiracy.

The Government also argues that Defendant Simon's statements about the previous crimes he and Diaz committed are admissible against Defendant Diaz as adoptive admissions under Fed.R.Evid. 801(d)(2)(B). The Government asserts that Defendant Diaz adopted Simon's statements by remaining silent when they were made in his presence. The Government further asserts that Diaz did not merely acquiescence in the statements by silence, he actually joined in the conversation and provided additional information about the prior crimes. The Government cites *United States v. Giese*, 597 F.2d 1170, 1196 (9th Cir. 1979), *United States v. Sears*, 663 F.2d 896, 904 (9th Cir. 1981), and *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985) in support of its position.

*United States v. Sears* states that before admitting a statement as an admission by silence or acquiescence, the district court must determine as a preliminary question, whether under the circumstances an innocent defendant would normally be induced to respond. The court should not submit the evidence to the jury unless it first finds that sufficient foundational facts have been

introduced for the jury to reasonably conclude that the defendant actually heard, understood and acceded to the statement. The jury, however, is primarily responsible for deciding these questions. 663 F.2d at 904. The District Judge must ultimately determine whether Defendant Simon's statements are admissible against Diaz as statements by a co-conspirator in furtherance of the conspiracy or as admissions by acquiescence. The Government has, however, made a credible argument for the admission of the statements, subject to laying the foundational facts for their admission.

Based on the foregoing, the Court concludes that severance is not required pursuant to *Bruton v. United States*. The statements at issue are nontestimonial and do not implicate the Confrontation Clause. The Government states that it will not elicit testimony regarding those portions of Defendant Simon's statements made prior to April 7, 2013 that implicated Defendant Diaz. The Court should give limiting jury instructions that Defendant Simon's statements to the confidential informant prior to April 7, 2013 are admissible only against him and not against the Codefendants. Defendant Simon's statements during the April 7, 2013 recorded conversation relating to the planned robbery are potentially admissible against all three Defendants as statements in furtherance of a conspiracy. The statements regarding prior crimes may also be admissible against Defendant Diaz as admissions by acquiescence. If, however, the District Judge decides that any of statements are not admissible against Defendants Diaz or Del Valle Garcia, then the statements should be appropriately redacted and limiting instructions should be given.

## CONCLUSION

Based on the foregoing, the Court concludes that severance of the trials of Defendants in this case is not required either pursuant to *Bruton v. United States* or based on the disparity of evidence against the Defendants. Neither Defendant Del Valle Garcia nor Defendant Diaz will be unfairly prejudice by a joint trial in this case. Accordingly,

. . .

. . .

. . .

. . .

**IT IS HEREBY ORDERED** that Defendant Alexander Del Valle Garcia's Motion to Sever (#75) and Defendant Diaz's Joinder to Defendant Del Valle Garcia's Motion to Sever (#93) are **denied.**

DATED this 31st day of March, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge