1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

9

United States of America,

10

Plaintiff

11

vs.

12

Alexander Del Valle-Garcia,

13

Defendant

Case No.: 2:13-cr-00148-JAD-GWF

**Order Approving Magistrate Judge's
Findings and Recommendation [Doc. 121] and
Denying Defendant's Motions to Suppress
Statements [#73] and Search [#74]**

14

15   Alexander Del Valle-Garcia, Julio De Armas Diaz, and Alex Torres Simon are charged with

16   conspiracy to interfere with commerce by robbery for their alleged plan to rob a pharmaceutical

17   delivery van.  The defendants allegedly planned to confront the delivery van driver at home and at

18   gunpoint, tie him up and cover his mouth with duct tape, drive the van to another location where they

19   would remove the pharmaceutical products, and then abandon both the driver and the van.  When the

20   defendants arrived at their prearranged meeting site approximately 500 yards from the home of the

21   delivery van driver, FBI agents—keen to the plan through a confidential source—descenced in and

22   took them into custody.

23   Mr. Garcia gave his consent to search the Nissan Altima he arrived in.  Inside, the agents

24   discovered gloves and duct tape.  Garcia was then transported to the FBI Headquarters and taken to

25   an interview room where he was Mirandized and he agreed to speak with the agents.  During the

26   ensuing interview, he denied any knowledge of the robbery conspiracy.  He claimed that he was

driving a friend to apply for a job that morning and that the gloves and duct tape found in the vehicle belonged to the vehicle's registered owner.  Based on these allegedly false statements, Defendant Garcia was also charged with making a false, fictitious, and material statement to the FBI in violation of 18 U.S.C. § 1001.  *See* Doc. 77 (count four).

Mr. Garcia moves to suppress the fruits of the search of the Nissan Altima and his subsequent statements.  Docs. 73, 74.  He contends that the search was unconstitutional because he did not knowingly and voluntarily consent to the search of the vehicle because he—a Spanish speaker with very limited English comprehension—was given a consent form that was only in English, there is no evidence that a translator was there to translate the form, and the prosecution has offered no evidence that the agent individually explained the constitutional rights that Mr. Garcia would be giving up. Doc. 74 at 7.  He further contends that his statements to the FBI should be suppressed because they were obtained as a result of the unlawful search of the vehicle and the unconstitutionality of that process was not cured by the subsequent *Miranda* warnings.  He also disputes the voluntariness of his statements to the FBI on the premise that the agent's Spanish was not sufficiently proficient to guaranty that Mr. Garcia—who speaks in a Cuban dialect—fully understood.  Doc. 87.

Magistrate Judge George Foley conducted a three-hour evidentiary hearing on both motions on March 20, 2014.  *See* Doc. 102.  The Government presented the testimony of Agent Shay Christensen, who testified about his training and experience in Spanish-language translation and described how he personally obtained Mr. Garcia's consent for the search and subsequent *Miranda* waivers.[1]  Magistrate Judge Foley issued his 13-page Findings and Recommendations on these

---

[1] The Government also called Jason Eksterowicz, a chef at the MGM Grand Hotel and Casino, who testified that he worked with Mr. Garcia for approximately three years and it was his observation that Garcia was able to understand and speak the English language sufficient to communicate with supervisors and fellow employees and perform his work duties at the MGM.  Those duties included the review and signing of various employee-training documents and the daily preparation of written event orders, food orders, and requisition forms in English.  Mr. Garcia offered the testimony of a former co-worker and neighbor of Garcia's who testified that he believed Garcia was not fluent in English and needed assistance with English translation.

suppression motions on March 25, 2014.  Doc. 121.  He found that Garcia's "execution of the written consent form, combined with his verbal consent to the search, supports a finding that he knowingly and voluntarily consented to the search, notwithstanding the otherwise coercive nature of the surrounding circumstances" and the vehicle search "did not violate the Fourth Amendment."  *Id.* at 11.  He further found that Agent Christensen "did, in fact, competently and accurately communicate" with Mr. Garcia "in Spanish during the interviews on April 8 and April 12, 2013," and read Garcia his *Miranda* warnings "in Spanish from the Spanish language Advice of Rights form," and Garcia "knowingly, voluntarily and intelligently waived those rights prior to speaking with the agents." *Id*. at 12-13.  Magistrate Judge Foley concluded that Garcia "knowingly, voluntarily and intelligently consented to the search of his motor vehicle on April 8, 2013" and was "properly informed of his *Miranda* rights" prior to any FBI questioning.  *Id*. at 13.  He recommended that both motions to suppress be denied.  *Id*.

Mr. Garcia objected to the Magistrate Judge's findings and conclusions almost categorically, arguing that:

1.  The record does not support a finding that Garcia's consent was voluntary because the evidence, when considered under the Ninth Circuit's five-factor test, demonstrated, at best, that Garcia "acquiesced or submitted to SA Christensen's request to sign" the consent-to-search form for the vehicle.

2.  Mr. Garcia's *Mirandized* statements were so close in proximity to the illegal vehicle search that even the *Miranda* warnings could not eliminate the taint, thus Garcia's statements are also the fruit of the poisonous tree.

3.  Magistrate Judge Foley overlooked the fact that SA Christensen's English-translated testimony of Mr. Garcia's statements cannot be considered Mr. Garcia's own voluntary statements because the translation was not performed by an unbiased, certified interpreter and thus fails the test established by the Ninth Circuit in *United*

3

1   *States v. Nazemian*.[2]

2   Doc. 133.  The Government responded that the factors weigh in favor of (and the evidence

3   supported) Judge Foley's findings that SA Christensen effectively advised Garcia of his rights and

4   obtained his knowing and voluntary consent to search the vehicle, Doc. 137 at 5-8; because the

5   search was conducted with consent, the fruit-of-the-poisonous-tree doctrine does not bar the

6   admission of Garcia's subsequent waiver of his Mirandized statements, *id*. at 9; and *Nazemian* has

7   no application under the facts of this case.  *Id*. at 9-10.

8       This Court has conducted a thorough de novo review of the record in this case in accordance

9   with 28 U.S.C. § 636 (b)(1)(C), Federal Rule of Criminal Procedure 59(b)(3), and Local Rule 3-2,

10  including but not limited to a careful listening of the recording of the March 20, 2014, hearing and a

11  review of the exhibits admitted into evidence at that hearing, and read and considered the underlying

12  and subsequent briefing.  The Court adopts Judge Foley's recommendation, overrules the

13  defendant's objections, and denies both motions to suppress for the reasons below.

14                          **Discussion**

15  **A.      The Evidence Supports a Finding of Garcia's Voluntary Consent to the Search.**

16      Defendant contends that the Government was not properly held to "its burden of proving that

17  consent was freely and voluntarily given" to search the vehicle, and, at best, it only demonstrated that

18  Garcia "acquiesced or submitted to SA Christensen's request to sign the consent to search form."

19  Doc. 133 at 6.  The crux of Garcia's objection in this regard is his claim that the Magistrate Judge

20  "did not afford enough weight to the coercive nature of the circumstances surrounding" Garcia's

21  consent, circumstances that included (1) Garcia and the other defendants being taken into physical

22  custody at gunpoint by several FBI agents, handcuffed, and placed on the ground; and (2) SA

23  Christensen asking Garcia if he could look through the vehicle *before* the officer translated the

24  English consent form into Spanish and obtained Garcia's signature on that form—a fact from which

25  _____

26      [2] *United States v. Nazemian*, 94 F.2d 522 (9th Cir. 1991).

"[o]ne could infer . . . that SA Christensen deliberately obtained unwarned consent then tried to fix it with an English form, the translation of which he controlled." *Id*. at 10.  The Court disagrees.

### 1.    *The officers did not have their guns drawn.*

The evidence adduced at the hearing demonstrated that the coercive, guns-drawn environment at the time of the initial arrest had dissipated before Garcia's consent was obtained.  SA Christensen testified that he alone was the officer who personally obtained Mr. Garcia's consent to search the Nissan.  He stated that once the defendants were handcuffed and sat down, all of the law enforcement officers' rifles and bullet-proof vests were then "put away" or "packed away" in their vehicles, and all handguns were holstered.  Officer Christensen's testimony established that he then approached Garcia alone, not in conjunction with other officers, asked him whether he preferred to speak in Spanish or English, and then told him in Spanish that the agents wanted to look through the vehicle.  Mr. Garcia responded, "yeah, go ahead."  This officer then took out a consent-to-search form in English and translated it verbally to Mr. Garcia "line-by-line" into Spanish. Gov. Exh. 62. At the end of the translation, Mr. Garcia verbally indicated that he fully understood the officer's statements and the contents of the form and that he did not have any questions.  Garcia's handcuffs were removed so he could sign the form, he had the opportunity to look at it, and he then signed it. The form contains the statement (verbally translated into Spanish for Garcia) that he had the right not to consent. *Id*.

"Voluntariness is a question of fact that is determined by considering the totality of the circumstances."[3]  Whether officers had guns drawn at the time of the search is one Ninth Circuit factor utilized to determine whether consent was voluntary.[4]  However, the use of guns for the arrest does not prevent consent if the guns are subsequently holstered.  Thus, in *United States v. Alfonso*, a

---

[3] *United States v. Childs*, 944 F.2d 491, 495 (9th Cir. 1991).

[4] *United States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2004).

1  Ninth Circuit panel found a defendant's consent to search his motel room valid even though he had

2  been arrested with guns drawn where, "after entering [his] room . . . the officers holstered their

3  guns."[5]  SA Christensen's testimony supported the conclusion that guns were all put away at the time

4  Garcia's consent to search was requested and obtained.

5       *United States v. Perez*, 644 F.2d 1299 (9th Cir. 1981), *United States v. Chan-Jimenez*, 125

6  F.3d 1324 (9th Cir. 1997), and *Liberal v. Estrada*, 632 F.3d 1064 (9th Cir. 2011), cited by Garcia in

7  support of his objection, do not suggest a contrary conclusion.  Nothing in *Perez* indicates that the

8  officers put away their guns before seeking consent; in *Chan-Jimenez* the officer kept his hand on his

9  revolver, letting the defendant "know that there could be adverse consequences for any failure to

10  submit to authority,"[6] and in *Liberal v. Estrada*, the defendant had been "verbally berated" by the

11  officer requesting consent, and he was surrounded by seven police officers.[7]  Each of those cases

12  presented the circuit court with a totality of circumstances not present here.  SA Christensen alone

13  approached Garcia (with his gun holstered and not visible), translated the consent form into Spanish

14  for him, removed his handcuffs, and obtained his signed consent for the search.  These facts support

15  the conclusion that Garcia's consent to the search of the Nissan was voluntarily given.

16
17       **2.    The officer's request to search before obtaining written consent is not akin to an
un-Mirandized confession.**

18       Defendant's suggestion that the consent was somehow impaired because SA Christensen

19  asked if he could search the vehicle before obtaining written consent lacks authoritative support.

20  Garcia suggests that the officer's request to search *before* reading the consent-to-search-form is "a

21

22

23       [5] *Alfonso*, 759 F.2d 728, 741 (1985); *see also Childs*, 944 F.2d at 496 (finding consent—despite gun-
point arrests—where the record did not show that the officer's gun was out of its holster at the time the defendant
consented to the search).

24

25       [6] *Chan-Jimenez*, 125 F.3d at 1326.

26       [7] *Liberal*, 632 F.3d at 1083.

corollary" to law enforcement deliberately obtaining an unwarned confession then later trying to cure it with a *Miranda* warning,[8] and he cites the United States Supreme Court opinion in *Missouri v. Siebert*[9] for this proposition. The analogy is unsound. Perhaps some correlation could be drawn if the search had been conducted between the verbal consent and the officer's translation of the consent-to-search form; but it was not. Both the verbal and written consents were obtained before the search was conducted. *Siebert* is a square peg for this round hole.

### 3. *Agent Christensen's Spanish-language competency was well established by the evidence.*

As a final point in his voluntariness argument, Garcia makes the conclusory statement that "a finding that rests solely on testimony by SA Christensen that he purportedly translated the consent to search form, under these circumstances, does not support a conclusion that the government carried its burden in demonstrating that Defendant knowingly and voluntarily gave consent to search the vehicle."[10] To the extent that Garcia is challenging the Magistrate Judge's finding that SA Christensen competently translated the consent form's language to him, the Court finds that the evidence supported Judge Foley's findings and conclusion in this regard. The officer's extensive training in the Spanish language was well established by his own testimony both on direct and cross examination, *see* summary, Doc. 121 at 3-4, 9-10, which this Court now confirms as an accurate reflection of the testimony at the hearing. Christensen was a credible and believable witness, and the Court concludes that he competently and accurately communicated with Garcia in Spanish when requesting Garcia's consent to search the vehicle and in translating the consent-to-search form before performing the search. The Court thus finds that the Government carried its burden in demonstrating

---

[8] Doc. 133 at 10.

[9] *Missouri v. Siebert*, 542 U.S. 600, 617 (2004).

[10] Doc. 133 at 11.

7

1    that Garcia's consent to search was knowing and voluntary.  These objections are overruled.

2
**B.      Because the Search Was Constitutional, the Fruit-of-the-Poisonous-Tree Doctrine Was**
3    **        Not Triggered.**

4            The consent-supported search of the Nissan means that the search was lawful.  As a result,

5    there were no products of an illegal search, and the derivative evidence rule—or the fruit-of-the-

6    poisonous-tree doctrine—simply does not apply.[11]  Having properly concluded that the vehicle

7    search was conducted with Mr. Garcia's consent, the Magistrate Judge had no reason to consider the

8    effect of that *lawful* search on Garcia's *Mirandized* statements.  This objection is overruled.

9
**C.      The Voluntariness of Garcia's Statements Is Not Undermined Merely Because Agent**
10   **        Christensen Is a Law Enforcement Officer.**

11           Finally, the Court overrules Mr. Garcia's objection that the Magistrate Judge failed to

12   consider whether, under *United States v. Nazemian,*[12] SA Christensen's translation of Garcia's

13   Spanish-language statements cannot be attributed to Mr. Garcia as his own voluntary statements.

14   *Nazemian* "addressed the issue of how to treat extrajudicial statements made through an interpreter

15   when the testifying witness was unable to understand the original language of the declarant and can

16   testify only to the words of the interpreter."[13]  SA Christensen was able to understand Mr. Garcia's

17   original language and testified directly to what Mr. Garcia told him; there was no intermediate

18   interpreter.  *Nazemian* simply has no application here.[14]

19   _____

20        [11] *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *United States v. Crawford,* 372 F.3d 1048,
1054 (9th Cir. 2004) ("[T]he Fourth Amendment's exclusionary rule applies to statements and evidence obtained
21   as a product of illegal searches and seizures.").

22        [12]  948 F.2d 522, 527 (9th Cir. 1991).

23        [13] *Nazemian*, 948 F.2d at 526.

24        [14] *See, e.g., United States v. Gonzales-Nunez*, 8 F.3d 31, 1993 WL 394898, *3 (9th Cir. Oct. 6, 1993)
(unpublished disposition) (distinguishing the *Nazemian* situation from the case in which interview was conducted
25   in Spanish by the agent and without use of independent interpreter, and holding that defendant's Spanish-
language statements to Spanish-speaking agent were admissible).

26

**Conclusion**

IT IS HEREBY ORDERED that the Magistrate Judge's Findings and Recommendation **[Doc. 121] are adopted and accepted in their entirety**;

IT IS FURTHER ORDERED that Defendant Alexander Del Valle Garcia's Objections to the Findings and Recommendations Denying Defendant's Motions to Suppress **[Doc. 133] are OVERRULED**;

IT IS FURTHER ORDERED that Defendant's Motion to Suppress Statements **[Doc. 73] is DENIED**;

IT IS FURTHER ORDERED that Defendant's Motion to Suppress Search **[Doc. 74] is DENIED**.

Dated April 14, 2014.

_____
Jennifer A. Dorsey
United States District Judge

9